**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER PREZIOSI,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>JETSMARTER, INC., MATT YOKLIC, and JOHN DOES 1-15,<br><br>　　　　　　Defendants. | Civil Action No. 19-13627 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court upon Defendants JetSmarter, Inc. and Matt Yoklic's ("Yoklic") (collectively, "Defendants" or "JetSmarter") Motion to Dismiss and Compel Arbitration. (ECF No. 7.) Pursuant to Local Civil Rule 7.1(d)(5), Plaintiff Christopher Preziosi ("Plaintiff" or "Mr. Preziosi") invoked the automatic Clerk's extension to extend the return date of the instant Motion. (ECF No. 11.) Plaintiff, however, failed to file any opposition. The Court has carefully considered Defendants' submission and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss and Compel Arbitration is granted in part and denied in part.

**I.　BACKGROUND**

　　This case arises out of a "Sophisticated Membership" Plaintiff purchased for $40,000 from JetSmarter for private jet services and related benefits. (Compl. ¶ 12, ECF No. 1.) Plaintiff purchased the membership in October 2016, after corresponding with JetSmarter and its representatives, including Yoklic, and after seeing JetSmarter's advertisements. (*Id.* ¶ 10.)

Yoklic highlighted the nationwide complimentary jet services and other additional benefits, including concierge and helicopter services, a current price "lock-in," and the option to extend the terms of the current membership for no additional cost, all of which were provided in the membership plan. (*Id.* ¶¶ 10-11.)

The Membership Agreement contains an arbitration provision in the "Dispute Resolution" section, which provides:

> Any claim or dispute arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, "Disputes") between the Parties and/or against any agent, employee, successor, or assign of the other, whether related to this agreement or the relationship or duties contemplated herein, including the validity of this clause, shall be resolved by binding arbitration by the American Arbitration Association, under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, by a sole arbitrator. . . . You acknowledge and agree that you and JetSmarter are each waiving the right to a trial by jury. . . . The place of arbitration shall be Broward County, Florida.

(Membership Agreement 12-13, Defs.' Mot. to Dismiss Ex. 2, ECF No. 7-18.)

In or about February 2018, Plaintiff renewed his membership, which Yoklic indicated would include the related benefits, for an additional year. (Compl. ¶¶ 13-14.) Plaintiff enjoyed his membership until April 2018, when he realized the complimentary flights had ceased and the benefits had been removed from his membership, resulting in financial harm. (*Id.* ¶¶ 15, 17.)

Plaintiff's Complaint alleges: Breach of Contract (Count One); Violation of Good Faith and Fair Dealing (Count Two); Consumer Fraud (Count Three); Fraud (Count Four); Violation of New Jersey's Truth-In-Consumer Contract Warranty and Notice Act (Count Five); Unjust Enrichment (Count Six); and Repondeat Superior (Count Seven). (*Id.* ¶¶ 18-60.) Defendants

2

filed the instant Motion to Dismiss and Compel Arbitration pursuant to the Dispute Resolution clause of the Membership Agreement.

## II. **LEGAL STANDARD**

As a threshold matter, Defendants assert that the Court should review the instant motion under Federal Rule[1] of Civil Procedure 12(b)(6). (Defs.' Moving Br. 10, ECF No. 7-1.) Defendants base their argument on the arbitration provision found in the Terms of Use and Membership Agreement, which requires the dispute "to be decided by a neutral decision-maker in arbitration, and not by a jury in the District of New Jersey." (*Id.* at 2.)

In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013), the Third Circuit provided the standard for district courts to apply in deciding a motion to compel arbitration. The Third Circuit stated:

> [W]hen it is apparent, based on the face of [the] complaint[] and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay . . . But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.

*Id.* at 776 (internal quotation marks and citations omitted).

Here, it is apparent from the face of the Membership Agreement that Plaintiff's claims are subject to an enforceable arbitration agreement. As such, the Court reviews Defendants' Motion pursuant to Rule 12(b)(6).

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

3

## III. DISCUSSION

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, to thwart "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA "creates a body of federal substantive law establishing . . . the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). The FAA declares that "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Whe[n] there is a contract between the parties that provides for arbitration, there is an 'emphatic federal policy in favor of arbitral dispute resolution.'" *Hoover v. Sears Holding Co.*, No. 16-4520, 2017 WL 2577572, at *1 (D.N.J. June 14, 2017) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Raynor v. Verizon Wireless, LLC*, No. 15-5914, 2016 WL 1626020, at *2 (D.N.J. Apr. 25, 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

"[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court must determine: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted) (quoting *Certain Underwriters at Lloyd's*, 584 F.3d at 527). Under Section 2 of the FAA, "an arbitration provision is severable from the remainder of the contract"; therefore, only challenges specific to the validity of the arbitration agreement are relevant to a court's

4

determination of an arbitration agreement's enforceability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)).

A. <u>**The Arbitration Provision is Valid**</u>

Defendants contend that the arbitration provision, despite being found in a clickwrap agreement, is enforceable. (Defs.' Moving Br. 1.) According to Defendants, Plaintiff assented to the terms of the Membership Agreement, which included the arbitration provision, when he clicked a check box signaling acceptance after presumably reading the Terms of Use of such agreement. (*Id.* at 1.)

It has been established in Florida and the federal circuits, alike, that "clickwrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, No. 05-642, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006). Moreover, the arbitration provision clearly and unambiguously states that Plaintiff must submit to binding arbitration in the event any issues arise. (Membership Agreement ¶ 18.) The provision also provides that all disputes "shall be resolved by binding arbitration" and a "sole arbitrator" shall resolve those disputes. (*Id.*) Thus, the arbitration provision is clear and unambiguous, and Plaintiff's waiver of his right to sue in court is apparent from the face of the arbitration provision. *See, e.g., Kaplan v. Kimball Hill Homes Fla., Inc.*, 915 So. 2d 755, 761 (Fla. Dist. Ct. App. 2005) ("[A]n agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury."); *see also Henry v. Pizza Hut of Am., Inc.*, No. 07-1128, 2007 WL 2827722, at *6 (M.D. Fla. Sept. 27, 2007) (internal quotation marks and citation omitted) ("The loss of the right to [a] jury trial is a fairly obvious consequence of an agreement to arbitrate.").

5

B.  **The Arbitration Provision Delegates Arbitrability**

The Court next turns to the issue of arbitrability, *i.e.*, whether the dispute falls within the scope of the Membership Agreement. *See, e.g., Beture v. Samsung Elecs. Am., Inc.*, No. 17-5757, 2018 WL 4621586, at *3 (D.N.J. July 18, 2018). "[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69 (internal quotations omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). The Court may not decide the issue of arbitrability if a valid arbitration agreement delegates such issue to an arbitrator. *Id.* at 530.

Here, the arbitration provision expressly delegates the issue of arbitrability to an arbitrator; it provides that "*[a]ny claim or dispute . . . whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause*, shall be resolved exclusively by binding arbitration." (Membership Agreement ¶ 18 (emphasis added).) As such, the Court does not reach the issue of arbitrability, as that is a matter for the arbitrator's review.

The Court, therefore, finds the arbitration provision valid and the scope of that provision an issue for the arbitrator to review. The Court, accordingly, grants Defendants' Motion to Compel Arbitration.

IV.  **STAY PENDING ARBITRATION**

Finally, the Court notes that Defendants move to both dismiss this action and compel arbitration. (Defs.' Moving Br. 21-22.) Defendants' argument to dismiss, rather than to stay the

6

matter, consists of a footnote. The footnote provides in its entirety: "While the FAA requires a stay of any action subject to a valid arbitration agreement, this Court has the discretion to dismiss this action if all the issues raised are arbitrable." (*Id.* at 10 n.2 (citing *Hoffman v. Fid. & Deposit Co.*, 734 F. Supp. 192, 195 (D.N.J. 1990)).) Defendants' assertion fails to persuade the Court that it should dismiss, rather than stay, the matter. The Court, therefore, denies Defendants' Motion to Dismiss, and stays and administratively terminates the matter pending the completion of arbitration pursuant to Section 3 of the FAA.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered that Defendants' Motion to Dismiss and Compel Arbitration is granted in part and denied in part. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** February 28, 2020